Good morning. May it please the court, Kayla Gassman from the Federal Public Defender for the Appellant Juan Compian. The issue before the court are two sex offender related special conditions of supervised release imposed on Mr. Compian's instant offense for transporting an alien. The first condition requires Mr. Compian to register as a sex offender.  The second condition prohibits him from residing, working, or going within 1,000 feet of certain locations where children may frequent or congregate without permission. Special conditions must satisfy at least two statutory requirements. They must be reasonably related to the 3553A sentencing factors, and they cannot be more restrictive than necessary. Here, where the two conditions are justified only by Mr. Compian's 1991 Florida sex offense, which is now more than 25 years old, the conditions fail both of these requirements. First, turning to the sentencing factors, every special condition must be reasonably related to at least one of the permissible factors. These factors include the nature of the offense or the history and characteristics of the defendant, the need to provide deterrence, the need to protect the public, or the need to provide care, treatment, or training to the defendant. Here, I think there's no question that the two conditions are not related to the nature of the instant offense, which is transporting an adult alien. They're also clearly not related to any need to provide care or treatment to Mr. Compian. My argument is that these conditions are also not sufficiently related to Mr. Compian's history, to the need to provide deterrence, or to the need to protect the public. So it seems to me, though, that you can see that if Texas required him to register, then it would be appropriate to say, basically, you've got to follow state law and register. There seems to be a lot of confusion and concern about whether Texas does require him to register. So who resolves that? Should we resolve that on appeal? Should we send it back to the district court to resolve? Assuming, arguendo, that we think that's critical, that the state requires it, who resolves that question? Well, I think the answer to that question is you can resolve that question if you want to resolve that question, but I don't think there's any need for this court to resolve the question. In the past, in at least one case called Talbert, what this court did was simply amend a similar condition to require registration if the state required registration. So to make the condition explicitly dependent on state law, in which case that renders the condition entirely duplicative. Do you think we should modify it to say that? Yes. And then what happens when y'all are fighting about whether or not he does have to register in Texas? So then what happens with that? Well, then that fight moves to the Texas state courts. Because as it stands, if the condition required registration, only if the state required registration, then the fight is no longer in federal court. Because there's a mandatory condition that requires Mr. Compion to follow state law. The court would be violating the conditions of his supervised release. Well, currently, the Texas Department of Public Safety, although it's changed its mind during the pendency of this appeal, provides that Mr. Compion is required to register as a sex offender in Texas. Of course, he's going to register. He's going to comply with DPS as long as their position is that he must. But he, DPS, can change his mind again. Or Mr. Compion can go through the prescribed Texas procedures to challenge that DPS determination. So he's going to register as long as DPS says he's going to register. The problem with the condition as it stands now is even if Mr. Compion successfully challenged the Texas requirement and DPS would agree that he is not required to register, this condition would independently still require him to register. If it is not modified to be dependent on state law. So I believe the parties agree that if the condition is amended to be dependent on state law, then there is no issue. Because, of course, there's a mandatory condition that requires Mr. Compion to comply with state law. But typically, we don't. Not because we couldn't. But typically, we don't, as a plenary matter, make adjustments to sentences. I mean, we would remand to the district court, argue with some instruction to do it, or whatever. I'm not saying we can't in terms of empowerment. But more typically, we don't, in the first instance, as a plenary matter, just amend a sentence. We almost always sit it back down, either with some instruction or some directive or whatever, in terms of that. Do you agree with that? I agree partially with that. I agree that often, with respect to the length of an imprisonment sentence, certainly the court always sends it back to the district court to impose that sentence. But actually, with regard to special conditions, I have given the court several examples of times when the court either struck a special condition, because it didn't comply with the statutory requirements, or modified a special condition, and vacated it and remanded for the limited purposes of correcting the judgment to item to strike the condition. I was going to say, the physics of it are we usually send it back for the physical document to be corrected, not just some appellate opinion out there. But we have said, this is how you correct it. So maybe I don't have the stats on how often we've done it. Yes, certainly. And I've pointed the court to at least, I believe, two or three cases where the court did that. A case called Fernandez, where the court struck a computer filtering condition, and just vacated for the limited purpose of correcting the judgment to strike that condition from the judgment. Recently, in Ramos Gonzalez, Judge Stewart, I believe you were on that panel, the court struck a drug testing condition, and vacated it without remanding, and went through multiple reasons why the court is not remanding. Here, I think that is the remedy that I have requested, that I believe would be the most appropriate, because I believe these conditions are not related to the factors, the sentencing factors, and are more restrictive than necessary, where they're based only on the 1991 sex events, that is now more than 25 years old. But in the interim, he's had some exchanges with the law, shall we say. He has. Including violent problems, shall we say. He's had, I believe, one or two DUIs. He had a Texas assault family violence, which involved him, the PSR provided that was pulling the arm or the finger of, I believe, either his wife or his girlfriend. But he has not had any offenses, any sex offenses. Yeah, but you know, I mean, and I appreciate that, and we have to go with what he's convicted of, but to me, the domestic violence situation, it's edging onto that framework. So we can't just say, look, he had one mistake, he's learned from it, he's moved on, that was a long time ago. Well, that's what the court has looked at when judging the propriety of sex offender special conditions. It has looked to how old the sex offense is, whether there are other offenses against children or other sex offenses, and whether there are failure to register convictions. Is there a temporal limitation on when a previous sex offense is relevant to a condition of release? If it were 10 years ago instead of 25 or more years ago? That is a different question. I don't think there is necessarily a clear-cut update. The court has looked to how old the sex offense is in judging whether a condition is justified. In Fernandez, the sex offense, I think, was 12 or 14 years old, and the court said that was too old to justify a computer filtering ban. In both Huor and Salazar, the sex offenses were more than 15 or 20 years old, and the court said those were too old. Here, I think the relevant points are that the sex offense is more than 25 years old, and he has had no sex offenses, no offenses against children, and no failures to register in the interim period. So this 25-year-old sex offense is all there is. Here, the conditions must also not be more restrictive than necessary, but both conditions are quite restrictive. Let's talk about the frequently one, because haven't we allowed such conditions where there is a limitation on frequently? Just saying someplace where there might be kids, that's overbroad. Here we are in a courtroom in a law school, and there's people under the age of 18. So that's too broad. However, we have said that the word frequently or frequent is enough of an explanation and enough of a limitation on the limit that it's not overbroad. Why is this outside of that? So in particular, the case primarily that says that is Fields, and Fields is different than this case in at least three ways. One, the condition actually is less restrictive in Fields. Second, the defender's history was more serious in Fields. And third, the court's standard of review was less demanding in Fields. So first, on the restrictiveness, the particular condition in Fields prohibited the defendant from residing or going to places where minors were known to frequent. And the court placed a lot of emphasis on the known to frequent standard, saying that made it objective. Here, what we have is a condition that prohibits Mr. Compion from accessing anywhere within 1,000 feet of places where children may frequently congregate, which is a more vague and a more subjective standard. And in addition to that, the condition in Fields prohibited the defendant from directly going to or residing in those places. But what the condition here does is set up a radius around those places in which Mr. Compion can't go, can't live, and can't work. So it is a broader restriction than simply saying you can't go to certain places where minors are known to frequently. It helped me understand something you said earlier about the Texas DPS is now determined that he is required. So what the ongoing process, I mean, how did that come about? Was that a temporary determination or what? Part of the answer to that is I do not know what happened. Because at the time of the sentencing here, the PSR had some conflicting information about whether he was required to register. He was registered as a sex offender. The PSR said DPS was in the process of determining the length of that obligation. And that actual public registry stated that his obligation to register had ended in 2006. That was at the time I wrote my brief. That was the situation. And then during the pendency of this appeal, I believe as the AEOC put in his brief, he had made a call to the marshals, which perhaps initiated some process where that determination was changed. And the public facing registry was changed to provide that Mr. Compion must register for life. In terms of what happened within the DPS process, of course, I don't know. All that I know is that it changed. But according to my reading of the Texas state law, his obligation to register should have ended under the way that Texas does its registration analysis. And the argument that the prosecutor has made that he is required to register is entirely dependent on a pending motion to supplement the appellate record with information that was not presented to the district court, that the district court didn't consider, which is a DPS document from a private law enforcement website that sets out charts comparing various Florida offenses to Texas offenses, which is to be what DPS uses. But you're saying we really can't and shouldn't go behind that. If DPS says he should register, he'll register. If they say he shouldn't, he won't. And we shouldn't go behind that. Regardless of the issue of whether we should consider a document at the district court, putting that aside, your substantive argument is we really aren't the ones who should be deciding that anyway, because that's a matter of state law and procedure and whatever. Precisely. And in addition to that, it actually is quite a complex question about whether he's required to register. It's a categorical analysis that compares the elements of the offense, not the facts of the conduct. But then you get into what can you look at to determine what the elements of the offense are. Oh, we know a lot about that. The court is aware of the complexity of the categorical approach. So my position is there's no need for this court to wade into that complexity. But I do think it's important to note that that is only true if the court either vacates the condition or amends it to explicitly require registration only if state law does. As it stands, it does not have that limitation. So it would independently require registration even if Texas state law did not. That's why I think it's important to modify the condition. Back on the frequently, because I want to get this clear in my head, just practically, what is this doing to him that you think is too restrictive on him and not restrictive enough on the condition? It creates multiple radiuses of more than 300 yards around places such as playgrounds, arcades, schools. In addition to this extra addition of areas where children may frequently congregate in which Mr. Compion is prohibited from living, working, accessing, or loitering, whatever accessing means, which I think is a separate question that I've raised. He sets up three football fields width of a radius around all of those locations in which Mr. Compion cannot live, work, or go on a daily basis. That, I believe, is a far more restrictive condition even than the one in fields which simply prohibited the defendant from directly going to those places without permission. So you're saying it's the 300 yards that's the problem? To me, if you can't go there, you also can't live there and loiter. It's a very blunt instrument. It's not, for example, a pure associational restriction that would say you prohibit him from volunteering directly with minors or living in a house with minors or working with minors. Instead, what it does is it creates these zones of locations where he simply cannot go, cannot live, and cannot work. It's going to limit his employment opportunities. It's going to limit where he can live. These are all serious situations when someone is being released from imprisonment and trying to integrate themselves back into the community. Having these restrictions is going to be a serious problem for him. If the court does not have further questions, I will reserve my time for rebuttal. All right, thank you, Ms. Kavner. You have reserved time. All right, Mr. Kuhl. Good morning, and may it please the court. Andrew Gould for the United States. The district court properly exercised its discretion in imposing the two sex offender conditions of supervised release. The registration condition merely requires Mr. Compion to comply with state law, and the locational condition is materially the same as the one this court affirmed in fields under similar circumstances. This court should affirm the district court's judgment. Why was the DPS document not proffered or offered at the sentencing hearing? I assume you're referring to the DPS document that the government has moved to supplement the record with. Which came out several months or a few months before the sentencing hearing. It did come out a few months before the sentencing hearing. It's not entirely clear that the district court at that time was imposing the condition based on state law. It was more based on Mr. Compion's history. Frankly, the condition at the time, it was not requested by the government. The district court imposed it. We do think that there is a lawful basis behind the condition, and that's why we're here defending it today. So without the DPS document, what else in the record definitively supports the government's assertion that Mr. Compion is required to register as a sex offender in Texas? Sure. Two points. If it's just based on the record, exactly as it existed before the district court, we would then look into the PSR. Paragraphs 25 and 45 of the PSR, where it states that Mr. Compion is required to register as a sex offender. The PSR is the pre-sentencing report. Excuse me? Well, it was more so some of our audience back there would know when you say PSR. I apologize. Well, I mean, you know, we know, but using the term of art just so they might appreciate what the document says. Sure. The pre-sentence report is a sentencing document that's prepared by the United States Probation Office to assist the district court at arriving at a sentencing decision, both in terms of a sentence of imprisonment as well as supervised release conditions. In this case, the probation officer reported at paragraphs 25 and 45 of the PSR that he is required to register as a sex offender and he is registered as a sex offender, not was. Now, I do agree with Mr. Compion. There also is a statement that Texas DPS is evaluating his case to determine the length of his obligation to register. But notably, Mr. Compion never objected and said, whoa, whoa, whoa, I'm actually not required to register as a sex offender, or there's some unclarity about that. What did the probation officer, pretrial officer, prepare the PSR? What was that paragraph in there based on? I mean, it seemed that nobody really knew, I guess, that the district court was going to impose that condition, as you say. So in the PSR, those paragraphs, what was the requirement based on? I don't know. Honestly, I do not know what the probation officer relied on. If the probation officer consulted with DPS, if they went to the DPS website, I don't know, and I would purely be speculating before you today. Does this fall in the rule of the PSR is presumed to be correct unless it's challenged? I think that, yes. I'm trying to figure out. I mean, there's a factual element to this decision, and there's also a legal element to this decision. And so if the PSR said something about the law, that wouldn't be entitled to any deference. But if they say something about the facts and it's not challenged, then it's presumptively correct. That's correct. I think this case, and specifically with the registration condition and the reason the government is standing here before you defending it today is mostly based on the facts and whether standing here today Mr. Compion is required to register. I said, Judge, well, there were two points. One, as the record existed before the district court. The other component is the DPS sex offender registry website. Again, that was not before the district court. I mean, I'm looking at 45, and it says the defendant is registered as a sex offender. Texas Department of Public Safety officials are in the process of evaluating the defendant's case to determine the length of the defendant's obligation to register. I don't see that as saying he's required to. It says he is. And then this other, the 25 is a long, detailed description of his offense. I believe it states it toward the end of that lengthy description. Oh, it is noted. Okay, I see that. It noted that he's required to register as a sex offender. Again, we agree with Mr. Compion that paragraph 45, there is some equivocation in there. But there isn't necessarily a denial that he is not required to register. He didn't deny 25, and he didn't add to 45. No, he did not. As to the duration. The website, the sex offender registry website. Mr. Compion was the first to draw this court's attention to it in his opening brief in pages 5 and 26. We agree that this court can consider it. And in a case, Coleman v. Dredge, which the citation is 409 F3rd 665, this court can take judicial notice of an agency website. So I think even though the website, the district court didn't necessarily consider the website, this court can consider it. I mean, even if we could, I mean, oftentimes we, you know, take judicial notice when, you know, sort of that's the best way to get there, the best way to know, etc. But, I mean, whereas here, I mean, it's clearly, on the DPS side, a state matter. You know, whether it's a proceeding, boom-de-boom-de-boom. So, you know, we're the appellate court. I mean, why should we be in the business of having to look at a website and make a judicial notice, you know, about something like this when sentencing, you know, first and foremost, is a district court function. And then this issue kind of emerges from two sources. One, the district court says, A, you need to do it. B, over here, the state may require it. So we're asking the Court of Appeals to take judicial notice of these things that existed and so forth, but the government's latching on to defend it. It didn't ask for it, but, hey, it's there.  I just sort of resist the notion of we're sitting here plenarily ought to do the cleanup, so to speak. You know, looking at a website, letting in something that existed, but wasn't put in for the district court, not thrashing out, you know, why it's in the PSR if you're going to, you know, do it and so forth. I don't say we may not end up there, but I just sort of express some reticence to want to do all that when sentencing is really, you know, district court. We give some guidance and instruction, but it just seems like you and others have the wherewithal to pull together that which is needed, you know, once the decision is made, whether based on DPS or otherwise. There it is. Sure. It certainly is not the ordinary case that this court considers materials outside of the district court's record. We have simply argued that it is appropriate in this case. And the DPS document really isn't critical to the government's case. And let me explain why that is. Judge Haynes, you had asked who resolves this question of whether he's required to register. This is purely a state law matter, and I think Mr. Compion agrees with that. Under Crabtree, the court of criminal appeals case cited in the government's brief, DPS has been delegated the statutory authority to make the initial determination. That is subject to a challenge in Travis County District Court. But this is purely a state law matter, and so as we stand here today, DPS has stated that he is under a lifetime registration requirement. He can challenge it. He can file lawsuits in Travis County. And if he does, assume that he does, and assume that he succeeds in convincing the state court that he is really under a 10-year registration requirement. At that time, he can come back to district court and file. Okay, so then why would we not do the modification that your opposing counsel proposes, which is that we say the condition is modified or we send it back to modify the condition so long as that's required by state law. You will register as a sex offender in compliance with state law or whatever the phrasing is. But it seems like you all are arguing that Texas would require that, at least currently requires that. Why not just go with that and we're kind of done with this issue? We have actually in our brief, we've argued that if this – we think that the court can affirm as things currently stand, but we've argued in the alternative that it can affirm as modified if state law requires. This is somewhat news to me because the main remedy sought by Mr. Compion is vacate and strike them. I mean, there is no remand, or if there is a remand, it's purely ministerial. It is not that these conditions cannot be reimposed. So it's news to me that Mr. Compion agrees with that. We are not opposed to this court affirming as modified. GARA does that. And this is different from modifying traditional – It seems cleaner than all of this. I mean, one – I agree that when discretionary decisions have to be made by district court, we need to send it back. But I'm also well aware that district courts in Texas are extremely overwhelmed with work. So I'm not eager to create additional work that's unnecessary. This is a three-year term of supervised release. It's not lifetime. It's not forever. And rather than the back and back, let's go to Travis County, let's come back. Why wouldn't we just – okay, you've got to require – you've got to register under state law. Do it. Have a nice day. I mean, what's wrong with that? We're not opposed to that. Good. If this court affirms as modified – Good. Wonderful. Okay. Tell me about frequently. Moving to the locational condition. This is materially the same as in fields. Fields wasn't the first case to discuss the term frequent or these general terms. It dates back to the Paul case in 2001 that's cited in the government's brief because there in Paul, as in fields, and in a number of these cases, defendants with a sex offender past are complaining as to the over-breath. And in Paul, this court stated it's impossible to give a list of exact locations. And we can – and they were agreeing there with a First Circuit opinion saying that we can construe it in a common-sense way. In fields, the condition was that the defendant was prohibited from residing or going to places where a minor or minors are known to frequent without prior approval of the probation officer. Here it's that he shall not reside, work, access, or loiter within a thousand yards of schoolyards, parks, playgrounds, arcades, or other places primarily used by children under the age of 18 or where children may frequently congregate unless approved in advance in writing by the US Probation Office. Those say basically the same thing. I mean the difference is, of course, that this condition adds a 1,000-foot radius. And then there is the challenge where children may frequently congregate. That is no different than – as a practical matter than where children are known to frequent. They say the same thing. And, in fact, there's more support for this condition here than in fields because here there's an illustrative list of places that provides even more ex-ante knowledge, which fields talked about. So you're saying if he's looking for guidance about whether he can go somewhere, then he would look at kind of the sister list of places and it would be – because I'm wondering about, say, a place like, I don't know, Olive Garden. I mean there's a lot of adults there, but there's a lot of children there. It's not a restaurant that only adults go to. So would Olive Garden be a place he can't go? No, not under the Paul case. The Paul case talks about – I believe it's the Paul case where it's a place where children go, but it's not one that they're known to frequent. Well, what about a McDonald's that has a fun house or whatever it's called? I would still say that it's not a place where children are known to frequent. Okay, Chuck E. Cheese's. That very well may – that's different. Okay, so he's got to make those determinations based on what? Because McDonald's is clearly trying to get children there by having this playground. Olive Garden maybe is more neutral, but a lot of children go there, and then Chuck E. Cheese's is specifically seeking out children. How do we make – how does he navigate all of that? As this court's case law talks about, he could – if he wanted to go, say, to McDonald's because that's his favorite restaurant and he was concerned that this would run afoul of his condition, he can consult with the probation officer about it. This court has approved that. He should go through the drive-thru, right? But in the drive-thru, he'd be within 1,000 feet of the playground, right? Correct. If that were – I mean we don't think that that would be a prohibited location, but yes, if this court were to find otherwise, then true. He couldn't. So he couldn't even go to the drive-thru at McDonald's if it were determined that this playground is a place that children frequently congregate. We have argued in our brief that the way that this access should be construed is going with intent to remain for a period of time. It may be different from a drive-thru because he's not going there with the intent to remain for a period of time, so that may suffice. I want to say I did find it interesting that Mr. Compey at the beginning of his argument described this condition as it prohibits him from going to places. And I say that because that's actually not the words that are used in the condition. Again, it's Sean on your side, work, access, or whatever. But that's what we've argued. That's the government's argument is that really the term access is – it's not you just – you're walking down the street. That happens to be by a school, and you're prohibited from doing it. You're going to a place. The whole point of this is compliance. And, I mean, I would think the government argued that clarity would be a better thing for all. A, so it doesn't overwork the system, probation officers hauling people in and out because he misread the document. I mean, that's not the best use of time. And on the other hand, there's a clear set of what you can do, what you can't, not the idea. I mean, I wasn't trying to be facetious when I said the drive-thru, but just as the question just hangs there. You know, just sort of we're sitting here parsing out what could it mean, et cetera. So if the point of it is a set of conditions, this is what you know you can do and you can't. If you violate it, you know, boom. But it just seems a little much, and I would think the government would object. The clearer the better, so to speak. You know, is it access? Is it go but, you know, not too frequent? You know, 10 minutes there is okay. I mean, that just sort of to me moves us past clarity and deterrence into sort of a got you. You know, you were there too long, et cetera. And I know that the government would not want to be in and out of court, you know, parsing this language. So what's the clearest delineation the government can live with that might – you know, you've gone through a lot of our cases. Is there kind of a bright line that our cases have set? Is that what you were trying to argue? Well, it's not necessarily a bright line, and I think clarity is a virtue, and we do support that. But it's impossible – we agree with what this court said in Paul in that it's impossible to provide a definitive list of every single place that the defendant is prohibited from going to. So there needs to be some general terms. We – you know, there's been a lot of – much of the fight seems to be about the term access. Or at least – let me take a step back. The government – we find no problem with the term where children may frequently congregate. We think that's an objective term just as where minors are known to frequent, as this court explained, in fields is an objective term. So we don't find any problem with that term. That leads us back to access. Now, having read all the cases, would I write it differently? Probably, as – you know, we've argued that it's going with intent to remain – going with intent to remain for a period of time. That is the language that the judge used. What about a movie theater? So he's going to the R-rated movie, but next door is – I don't know what the current kid movie is, but Frozen Part 3 or whatever. And so that's clearly going to have a lot of kids that are going to congregate there. But he's not accessing that, but he's within 1,000 feet or 300 yards or whatever the number is because he's in the theater next door watching the R-rated movie where the kids aren't frequently congregating. So what about that? It may actually – it may depend on the time. I haven't seen one using the movie theater as a hypothetical, but I would imagine that it may – it very well could be because children do frequent. I know in high school I used to hang out at a theater on a Friday night with my friends. So it may end up prohibiting him. But that is a permissible condition because as this court has held in certain cases involving offenders with sex offenses in their history, some limitation on their access is permissible because of their underlying crime, because access to children was a necessary predicate. So there is some restriction on the liberty. It may end up restricting him from going to the movie theater, but that would be permissible. If the court has no further question, we ask that you affirm the judgment of the district court or affirm the judgment of the district court as modified. All right. Thank you. Thank you, Mr. Gould. Back to you, Ms. Gaskin, if you have any rebuttal. So we do want to use this time primarily to address the location restriction. This has gotten a little bit of a short trip I think. One thing that is important to keep in mind in this whole analysis is that the requirement that a condition not be more restrictive than necessary is essentially a proportionality analysis. Both fields and witnesses make clear that the court needs to compare the breadth of the condition to its justification. So, for example, a more serious history would justify a more restrictive condition. But here, where the only thing justifying the conditions is a sex offense that is now almost 27 years old, there's no- But it's only a three-year term. It's not a lifetime term. That's true. So that also figures in the length of the period. That's true. But it is also the first three years immediately after his release when he's first integrating into the community, which is when it's important that he's finding a job. But see, the finding a job to me can be solved through the probation officer. I tend to agree with the implicit discussion here that every time you want to go to McDonald's, calling up your probation officer seems a little bit much. But the job, if there's some concern about whether this job does or does not fit in here, you go to the probation officer. I'd like to work at such and such. Approves it. We're done. So it seems like the big integration issues, like where to live and where to get a job, can be handled that way versus can I get a burger at McDonald's or not. Right. And I think the court's exchanges with opposing counsel illustrate how difficult it is to actually determine how broadly this condition applies and how it applies to specific locations like theaters or fast food restaurants or something like that where kids maybe congregate there sometimes but not all the time. And does this McDonald's have a playground? Does it not have a playground? And exactly how difficult it is to determine, which does make that a broader condition. When it doesn't provide clear, ex-ante knowledge to Mr. Compion about where he can and can't go, then he's more restricted in where he can and can't go because he doesn't know ahead of time for sure whether or not going to a particular place is going to result in a revocation or a revocation sentence. And here, again, where it's based on a sex offense that's 25 years old and nothing else. Mr. Compion's around 50-ish? He's 52 now, 51 or 52. He was 24 at the time of his sex offense. And he has no offenses against children in the past 25 years, no other sex offenses. I would point the court again to Fernandez where the court vacated the computer filtering condition. And in that case, the district court justified the computer filtering condition by the ease of access that sex offenders would have to children through the internet. But this court on appeal said general recidivism concerns are not sufficient to justify a restrictive condition where the instant offense is not a sex offense, the only sex offense is stale, and there's no particular evidence of any specific risk that this person is going to commit future sex crimes. So here, particularly on the proportionality analysis, I think this condition is simply too broad compared to the thin justification of the now 25-year-old sex offense. I did want to just briefly address the remedy on both conditions. There are a couple of different things that are floating around, remanding, modifying, vacating, correcting the judgment. Of course, the remedy that I have primarily requested is vacating both conditions with a limited remand with instructions to simply remove the conditions from the judgment. With regard to the sex offender registration condition, I personally don't think it matters all that much whether the court vacates the condition or amends it to depend on state law to require registration only if state law does. Because either way, there's a mandatory condition that requires him to comply with state law. So whether there's an extra condition that requires specifically that he comply with the sex offender registration part of state law I think is really kind of a semantic argument. I tend to come down on the side of if it's an extra condition, let's not impose it because I don't know what the need is to have two conditions that say the same thing. And then if he does happen to violate that condition, he then has two violations at his revocation. But meaningfully, I think it is not really that different whether the court amends or strikes that condition. I do think it's important that whether the court modifies the condition or vacates it, that it actually do remand for the limited purpose of correcting the judgment because the judgment could certainly have collateral consequences. It's the primary document that sets forth his obligations to him, to the probation officer who writes the judgments, and also supervises. Yeah, but sending it back to correct the judgment, that can be done in the office. Having a resentencing requires everybody, and there's just more involved. I'm not saying we wouldn't order that if that's needed. I'm just saying I don't do it lightly. Right, that's true. So I have requested that the court vacate the conditions and amend to correct the judgment. All right. Thank you, Ms. Gassman, Mr. Gould. Both of you are regularly here before the court. You're always extremely well prepared in the briefing and argument. We really do appreciate the briefing and the help as we sort this out. So the case will be submitted. We'll figure it out. Thank you.